JOSEPH FLYNN & another *vs.* JOHN M. KORSACK & another.

Essex. May 3, 1961. — June 9, 1961.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Adverse Possession and Prescription. Equity Pleading and Practice,* Master: findings.

A report of a master containing mostly a recital of testimony together with a statement that he found such testimony to be true and reported it as the material facts was not in proper form. [16]

The facts that for more than twenty years the owners of a parcel of land or their spouses drove automobiles over a strip of the adjoining parcel openly, continuously, and without the permission of the owners of the

adjoining parcel justified conclusions that such use of the strip was under a claim of right and adverse and that a prescriptive right so to use the strip had been acquired, although for a substantial part of the period of such use it was not made "deliberately." [18–19]

BILL IN EQUITY, filed in the Superior Court on July 12, 1954.

The suit was heard on a master's report by *Thompson, J.*

*Joseph Golant,* for the defendants.

*James W. Santry, Jr., (W. Barry MacDonald* with him,) for the plaintiffs.

KIRK, J. The defendants appeal from an interlocutory decree confirming a master's report and from a final decree that the plaintiffs have acquired by prescription a right of way for automobiles to pass over a strip of the defendants' land which extends along a driveway between the adjoining properties. The final decree also ordered the defendants to remove a chain link fence and all other obstructions in the driveway and enjoined them from placing obstructions in the future.

The litigation has been unduly prolonged because of the failure of the master to do his duty. Three successive orders of recommittal were necessary because, apart from a failure to comply with formal requirements as to notice to parties (see Rule 90 of the Superior Court [1954]), there was a failure to find the facts. Instead there was a recital of the testimony given by the several witnesses followed by a general conclusion. As finally confirmed, the report mainly consists of a recital of testimony but it is coupled with a statement by the master that he finds the testimony set forth to be true and reports it as constituting the material facts of the case. This procedure emphatically does not have our approval. *Davis* v. *Noone,* 341 Mass. 488, 490–491. In the particular circumstances, however, because the testimony on the issue of prescription is not conflicting and because it has not been controverted by the defendants, we are able to decide the case. Doubtless the same considerations prompted the judge to enter the decree and thus avoid further delay.

The order of reference did not authorize the master to report the evidence and there was no request for a summary of evidence as provided in Rule 90 of the Superior Court (1954). Accordingly, the master's findings must be accepted as final, unless they are mutually inconsistent or plainly wrong. *Peabody Gas & Oil Co.* v. *Standard Oil Co. of N. Y.* 284 Mass. 87, 88. See *Sheppard Envelope Co.* v. *Arcade Malleable Iron Co.* 335 Mass. 180, 184–185.

The defendants contend that the findings are inconsistent in a particular which we shall discuss after summarizing the facts found. The plaintiffs and the defendants own adjoining lots on Summer Street in Lynn. A strip of land eleven to twelve feet wide separates the houses on the lots. The distance from the plaintiffs' house to the boundary line is seven and one half feet. Mrs. Brewer, a witness, lived in and owned the plaintiffs' house continuously from 1927 to 1949. "Her husband owned automobiles during the whole period from 1927 to 1949, and . . . drove said motor vehicles on the strip . . . during that whole period of time." From 1935 on Mrs. Brewer herself drove an automobile on the strip between the two houses although "she never thought anything about driving in over [it]" and "by looking she could not determine where the end of the property line could be"; "she didn't do it deliberately, but . . . 'there was nothing to stop us,' and they couldn't avoid it." [1]

In 1949 the Brewers sold the property to the Mosleys who also drove over the strip to reach the garage. The plaintiffs bought from the Mosleys in 1950 and drove over the strip until June, 1954, when the defendants erected a chain link fence on the boundary line. The areaway thereby became too narrow for passage by automobile.

[1] The master's report is ambiguous on the point of the witness's marriage. He found that "her husband" (singular) used the strip from 1927 to 1949. When she bought the house in 1927 she was Mrs. Magg. When she sold it in 1949 she was Mrs. Brewer. Obviously the master meant each of her successive husbands. Only if she was unmarried between 1932 and 1935 could there be a gap in the continuity of use. In any event the master has found that the adverse use was continuous from 1927. Inasmuch as the evidence is not reported we must accept this as true, and the ambiguity mentioned does not affect the result.

The defendants who bought their property in 1948 did not protest the use of the strip by the plaintiffs until 1952. The master concluded that "the plaintiffs and the[ir] predecessors in title have used a portion of the land of the defendants openly for a period of more than twenty years to drive motor vehicles into and out of the garage owned by the plaintiffs," that "No protest was ever made to the Flynns or their predecessors in title from 1927 to 1952 by the owners of the defendants' premises concerning the use of land owned by the defendants or their predecessors," and that the "use was open and notorious and continuous and under a claim of right," and covered an area to within three feet of the defendants' house.

The sole basis of the defendants' appeal is that the specific finding that Mrs. Brewer "didn't . . . deliberately" drive over the strip owned by the defendants is inconsistent with the finding that the use by the plaintiffs and their predecessors was "under a claim of right." This contention is of importance only if Mrs. Brewer's use is necessary to establish continuity in the adverse use. For the purpose of disposing of the contention we assume that Mrs. Brewer's use is necessary to establish the continuity.

In *Truc* v. *Field,* 269 Mass. 524, 528–529 (quoted in *Tucker* v. *Poch,* 321 Mass. 321, 324), it was said: "The rule in Massachusetts is that wherever there has been the use of an easement for twenty years unexplained, it will be presumed to be under claim of right and adverse, and will be sufficient to establish title by prescription . . . unless controlled or explained." This court recently has stated: "Acts undeniably may evidence an intent to claim as of right, *Shoer* v. *Daffe,* 337 Mass. 420, 423, and the physical facts of entry and continued possession may themselves evidence an intent to occupy and to hold as of right sufficient in law to support the acquisition of rights by prescription. *Holmes* v. *Johnson,* 324 Mass. 450, 454. That the uncommunicated mental attitude of the possessor is irrelevant where his acts import an adverse character to his holding is shown by cases involving disputed bound-

aries where the possessor intends to hold without intending to deprive any other of what is rightfully his. In *Van Allen* v. *Sweet,* 239 Mass. 571, a boundary case, the possessor was held to have acquired rights by prescription to a strip of land despite her statement to the plaintiff 'I do not want anything not belonging to me.' '' *Ottavia* v. *Savarese,* 338 Mass. 330, 334. See Restatement: Property, § 458, comment on clause (a). We are of the opinion that, despite Mrs. Brewer's statement subsequently made, that "she didn't do it deliberately," her actual use of the strip for fourteen years without permission of the true owner constitutes a claim of right in accordance with the principle stated. See Am. Law of Property, § 15.4.

The case of *Bartlett* v. *Roosevelt, Inc.* 258 Mass. 494, relied upon by the defendants, is distinguishable in that the master made findings to rebut the presumption of claim of right. See *Tucker* v. *Poch,* 321 Mass. 321, 324.

The interlocutory decree is affirmed. The final decree is affirmed with costs of the appeal.

*So ordered.*