MASA BUILDERS, INC. *vs.* RONALD R. HANSON. No. 89-P-213. March 27, 1991. *Adverse Possession and Prescription. Limitations, Statute of. Incompetent Person*, Statute of limitations. *Real Property*, Boundary.

In 1986 the plaintiff purchased an 11.5 acre parcel of backland in Mill-bury, then brought this trespass action to establish its ownership of a strip of land, variously described in the testimony as "a fifty foot strip" and "a thirty-five foot strip," connecting the backland to North Main Street (route 146) on the west. The plaintiff holds record title to the strip; the defendant, whose parcel fronts on North Main street and abuts the strip on the south, claims ownership of the strip by adverse possession. The judge sustained the defendant's claim. The plaintiff appeals, raising three contentions.

1. The plaintiff first challenges the judge's conclusion that the defendant, and his father before him, used the strip openly, adversely, uninterruptedly, and exclusively for the requisite twenty-year period. The plaintiff argues that the uses the Hansons made of the strip in most of the decade of the fifties — for a vegetable garden, to sell Christmas trees, to locate a foundationless children's playhouse — lack the requisite continuity or exclusivity, at least as applied to unimproved wood and scrub land, to put the owner on fair notice of "hostile activity . . . [such] that . . . the owner may have an opportunity to take steps to vindicate his rights by legal action." *Boston Seaman's Friend Soc., Inc.* v. *Rifkin Mgmt., Inc.*, 19 Mass. App. Ct. 248, 251 (1985), quoting from *Ottavia* v. *Savarese*, 338 Mass. 330, 333 (1959). The judge, however, dated the period of adverse possession later, from 1959, when the defendant's father built a garage behind his residence to conduct an auto and truck repair business, using the strip, which he cleared of trees and scrub, graded, and filled, as an access driveway thereto and as a lot for vehicles brought in for repairs. Two substantial signs erected in the early sixties directed customers into the strip. The plaintiff relies on several photographs — particularly an aerial photograph taken in 1970 — to dispute the defendant's claim that there were always cars in the lot awaiting repairs, and it contends that it was not until 1975, when the defendant took over the repair business from his father, that the business intensified and the strip took on the aspect of a substantial car park. There was, nevertheless, ample testimonial evidence supporting the judge's findings (without reference to the dumpster and the dry well that date from the seventies), and even the photographs from years prior to 1975 would suggest to an observer that the strip was a driveway and lot serving the Hanson's auto repair business and that the defendant's northern boundary line lay (as the Hansons, father and son, testified they actually believed) at the line of arborvitae trees marking the southern boundary line of Doucette, owner of the lot north of the strip. For cases somewhat comparable on the facts, see *Flynn* v. *Korsack*, 343 Mass. 15

(1961); *Boutin* v. *Perreault*, 343 Mass. 329, 332 (1961); *Mastrandrea* v. *Baressi*, 2 Mass. App. Ct. 54, 57 (1974); *Shaw* v. *Solari*, 8 Mass. App. Ct. 151 (1979); *Brown* v. *Sneider*, 9 Mass. App. Ct. 329, 332-333 (1980); *Stagman* v. *Kyhos*, 19 Mass. App. Ct. 590, 592-594 (1985).

2. In rejecting the plaintiff's contention that the twenty-year statute of limitations was tolled by the "insanity" of one of the three tenants in common (Algot Anderson) from whom the plaintiff purchased the property, see G. L. c. 260, § 7, as in effect prior to St. 1987, c. 522, § 19, the judge was applying the broad definition of that term which had been formulated by *Hornig* v. *Hornig*, 6 Mass. App. Ct. 109, 111 (1978), nine years earlier (and which was to be adopted by the Supreme Judicial Court in *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16 [1989]). The evidence showed that Anderson's sister, who was herself one of the joint tenants, was appointed his conservator in 1961. The petition was supported by a letter from a physician stating that Anderson was and would remain "unable to take care of his own affairs." The physician, whom the judge did not permit to give an expert opinion, testified from his notes that Anderson in 1961 was vague, disoriented as to time, and cirrhotic. Anderson went to a nursing home in 1961 and died in 1978. The judge was not persuaded that Anderson was "insane" at the time the cause of action accrued in 1959. See *Allis* v. *Moore*, 2 Allen 306 (1861); *Ballard* v. *Demmon*, 156 Mass. 449, 453 (1892). There was no error in this; the burden of proving insanity was on the plaintiff. We do not reach the question whether § 7 applies in a situation where one only of several joint owners qualifies as "insane," or, using the amended terminology, as having "mental illness."

3. There was no error in ordering that a surveyor determine the exact metes and bounds of the portion of the strip acquired by the defendant by adverse possession, but the order should have included a determination by the court of the guidelines by which the survey is to be governed. The judge found that the defendant had acquired the entire width of the strip (the assumption, unchallenged by the parties, being that the strip was bounded on the north by the Doucette tree line) but failed to determine the easterly boundary of the parcel acquired. The evidence would support two different easterly boundaries: either the line marked by the retaining wall that terminated the defendant's driveway and lot, or the yard line behind the retaining wall, which would include the portion of the strip occupied by the children's playhouse. Although the difference is probably of little moment to the plaintiff, it is best to settle the exact boundary now to avoid future litigation. The metes and bounds description should be included in the judgment itself; thus, the defendant should be ordered to cause a survey to be made, and the survey description should be reported to the court for resolution of any remaining dispute and for inclusion in the judgment.

The portion of the judgment declaring that the defendant has gained title to the strip by adverse possession is affirmed. The remaining portion

of the judgment relating to the survey is vacated, and the case is remanded to the Superior Court for further proceedings described in part three hereof.

*So ordered.*

*Frederick M. Misilo, Jr.*, for the plaintiff.
*Peter F. Keenan, Jr.*, for the defendant.